IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CINDY LEE SIZEMORE,                )
                                   )
            Plaintiff,             )
                                   )
      v.                           )     1:17CV837
                                   )
NANCY A. BERRYHILL,                )
Acting Commissioner of Social Security, )
                                   )
            Defendant.             )


MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Cindy Lee Sizemore ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed her application for Supplemental Security Income Benefits on April 30, 2013 alleging a disability onset date of January 1, 2008. (Tr. at 20, 189-95.)[1] Her application was denied initially (Tr. at 80-94, 113-21) and upon reconsideration (Tr. at 95-112, 125-34). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 135-37.) Plaintiff, represented by an attorney,

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

attended the subsequent video hearing on January 25, 2016, at which an impartial vocational expert also appeared and testified. (Tr. at 20.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from her application date through July 11, 2016, the date of the administrative decision. (Tr. at 37.) On July 30, 2017, the Appeals Council denied Plaintiff's request for review of this decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since April 30, 2013, her application date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> bilateral carpal tunnel syndrome, chronic obstructive pulmonary disease (COPD), diabetes mellitus, headaches, bipolar disorder, anxiety with panic disorder, cervical and lumbar radiculopathy, neuropathy, and obesity[.]

(Tr. at 22.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 22-25.) She therefore assessed Plaintiff's RFC and determined that she:

> has the residual functional capacity to perform light work, as defined in 20 CFR 416.967(b), with lifting up to 20 pounds occasionally, up to 10 pounds frequently; occasional climbing of ramps and stairs; occasional kneeling, crawling, crouching, stooping, and balancing; no climbing of ropes, ladders, or scaffolds; occasional exposure to hazards, fumes, dusts, gases, poor ventilation, extremes of heat and cold; no more than moderate exposure to noise, no repetitive reaching overhead; frequent handling and fingering, and occasional use of foot pedals. The work should be unskilled, simple, routine, repetitive in nature; no contact with the public; occasional contact with coworkers and supervisors; and routine changes only in the work environment.

5

(Tr. at 25.) The ALJ found at step four of the analysis that Plaintiff had no past relevant work. (Tr. at 36.) However, at step five, the ALJ determined that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 36-37.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 37.)

Plaintiff now challenges the ALJ's step five finding, raising two contentions. First, Plaintiff contends that the ALJ failed to identify and resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT") and "failed to pose a complete and un-ambiguous hypothetical question" to the vocational expert. (Pl.'s Br. [Doc. #14] at 5.) Second, Plaintiff contends that the RFC failed to properly account for her moderate limitations in concentration, persistence, or pace as required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Because Plaintiff's first contention requires remand, the Court need not consider the second issue raised by Plaintiff.

    A.    DOT Conflict

Plaintiff first challenges the ALJ's reliance on the vocational expert's testimony at step five of the sequential analysis. Specifically, the Plaintiff contends that the Vocational Expert's testimony conflicted with the DOT, but that the ALJ failed to obtain a reasonable explanation for the conflict. In Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit clarified the steps an ALJ must take to identify and resolve apparent conflicts between a vocational expert's testimony and the DOT. Specifically, the Fourth Circuit held that, if an expert's testimony apparently conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the

6

expert explaining the conflict and determined both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. Pearson, 810 F.3d at 209-10; see also Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016).

In the instant case, Plaintiff contends that the vocational testimony on which the ALJ relied at step five of the sequential analysis conflicted with the DOT as to all of the identified jobs. Specifically, the ALJ identified three representative jobs available in the national economy that Plaintiff could perform: Mail Clerk (209.687-026), Marker (209.587-034), and Final Inspector (727.687-054). (Tr. at 36.) All three of these positions, as defined by the DOT, require <u>frequent reaching</u>, with "frequent" further defined as occurring "from 1/3 to 2/3 of the time," and with "reaching" further defined as "[e]xtending hand(s) and arm(s) in any direction." However, both Plaintiff's RFC and the hypothetical question based upon it included a restriction to "<u>no repetitive reaching overhead</u>." (Tr. at 25, 75.) At no point did the ALJ identify the apparent inconsistency between Plaintiff's RFC and the frequent reaching required to perform the jobs identified at step five, let alone ask the vocational expert to explain the apparent conflict and receive a "reasonable explanation for any discrepancy." See Pearson, 810 F.3d at 209.[4]

---

[4] With respect to the basis for the overhead reaching limitation and other similar limitations in the RFC, the ALJ noted that Plaintiff testified that she is disabled due to constant neck and back pain (Tr. at 26), that according to the medical evidence Plaintiff has cervical and lumber radiculopathy (Tr. at 28), that x-rays indicated she had multilevel spinal and foraminal stenosis (Tr. at 28), that she had tenderness in her cervical spine at the consultative examination (Tr. at 30), and that the impression of the consultative examiner was that Plaintiff had "pain in the shoulders and neck with occipital neuralgia" (Tr. at 30, 758). The ALJ's decision sets out the medical records reflecting that:
> From March through October 2013, she sought treatment at Salem Neurological Center for complaints of neck and back pain and was diagnosed with lumbar radiculopathy and cervical radiculopathy and continued on pain medication and prescribed Imipramine. Nerve conduction

In the briefing, the Commissioner contends that there is no apparent conflict in this case because "[t]he DOT definitions of the three occupations provide that frequent reaching in all directions may be required, but the DOT does not speak to whether the specific action of repetitive reaching overhead is required." (Def. Br. at 2.) The Commissioner thus contends that "there is no conflict between the DOT's general information on the three occupations and the ALJ's narrow restriction." (Id.) However, this is the same contention that was considered and rejected by the Fourth Circuit in Pearson. Specifically, in Pearson, the RFC included a limitation to "occasional overhead lifting/reaching using the nondominant upper extremity," but the three occupations identified by the vocational expert at step five all reflected "frequent reaching" in the DOT. Pearson, 810 F.3d at 206. In Pearson, as in the present case, the Commissioner argued that there was no apparent conflict between the general reaching restrictions in the DOT and the narrow restrictions found by the ALJ. However, the Fourth Circuit concluded that this was exactly the type of apparent conflict that required further explanation and resolution by the ALJ:

---

studies performed in March indicated she had acute on chronic multilevel lumbosacral radiculopathy and multilevel cervical radiculopathy, and her exam revealed decreased strength distally.

….

In January 2014, she complained of neck and low back pain at Salem Neurological Center. She had 5/5 strength in her extremities, her gait was normal, and she had normal sensation. Nerve conduction studies done in January and July revealed acute on chronic multilevel lumbosacral radiculopathy was stable and multilevel cervical radiculopathy that was worse. In July and November 2014 and January 2015, she complained of neck pain and low back pain that radiated to her legs at Salem Neurological Center. She had 5/5 strength in her extremities, her gait was normal, and she had normal sensation. She was assessed with cervical and lumbar radiculopathy. She was given trigger point injections into the cervical paraspinal region and shoulders in July and November 2014.

(Tr. at 29, 633-641, 729-53.) The ALJ then found that the evidence supported "greater restrictions" than proposed by the State agency physicians for various activities, including greater restrictions for "reaching overhead." (Tr. at 34.) As set out above, the ALJ ultimately included a limitation to "no repetitive reaching overhead." (Tr. at 25.)

> Although the Dictionary does not expressly state that the occupations identified by the expert require frequent bilateral overhead reaching, the Dictionary's broad definition of "reaching" means that they certainly may require such reaching. Comparing the Dictionary definition to Pearson's limitations, the vocational expert's testimony that Pearson could fulfill the requirements of these occupations apparently conflicts with the Dictionary. Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert as to whether these occupations do, in fact, require frequent bilateral overhead reaching. If the explanation does not provide a reasonable basis for relying on the expert's testimony, that testimony cannot provide substantial evidence for a denial of benefits. If the expert's explanation is reasonable, the ALJ can resolve the apparent conflict with the Dictionary and rely on the expert's testimony.
>
> Deciding that the vocational expert's testimony apparently conflicts with the Dictionary here does not mean that an ALJ must find Pearson, or any other claimant with this limitation, unable to perform these jobs. Rather, it simply means that the ALJ and the expert should address exactly what form of reaching the stated occupations require and whether the claimant can fulfill those requirements. As the Seventh Circuit put it, "this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help." Prochaska, 454 F.3d at 736 (remanding the case for the ALJ to determine whether the vocational expert's testimony conflicted with the Dictionary because "the ALJ asked the expert for work that could be done by someone who could only 'occasionally reach above shoulder level' while a cashier's requirements, under the [Dictionary], include 'reaching' frequently").

Pearson, 810 F.3d at 211. This analysis likewise applies in the present case.

The Commissioner also contends that there is no conflict in this case because the RFC only limits "repetitive" reaching. However, the RFC in this case limited Plaintiff to <u>no</u> repetitive overhead reaching. In contrast, according to the DOT, the occupations identified by the vocational expert all involve frequent reaching, up to 2/3 of the day, and all involve repetitive or short-cycle work. A restriction precluding Plaintiff from <u>any</u> repetitive overhead reaching would appear to conflict with an occupation that involves reaching 2/3 of the day

9

doing repetitive or short-cycle work.⁵ See Hall-Grover v. Barnhart, No. 03-239-P-C, 2004 WL 1529283, at *4 (D. Me. April 30, 2004) (holding that the ALJ's step five determination was not supported by substantial evidence where he failed to question the vocational expert regarding an apparent inconsistency between a job that required frequent reaching and plaintiff's limitation to no repetitive reaching with the right upper extremity). Of course, as discussed in Pearson, the vocational expert may be able to explain that, in fact, no conflict exists, but no such explanation was provided here.⁶

Finally, the Commissioner contends that the vocational expert "confirmed that Plaintiff can perform these occupations without repetitive overhead reaching." (Def. Br. at 7.) However, the Commissioner refers only to the general testimony of the vocational expert identifying the occupations in response to the ALJ's hypothetical question. It is clear that the vocational expert never identified the conflict at issue here, and there is no testimony or discussion explaining how the conflict was resolved. As discussed above, the Fourth Circuit clarified in Pearson that the vocational expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both that the explanation was reasonable and that it provided a basis for relying on the expert's testimony rather than the DOT. That analysis was

---

⁵ The occupations identified by the vocational expert in the present case are all designated by the DOT as "repetitive" or "[p]erforming REPETITIVE or short-cycle work," which is consistent with the RFC limitation to work that is "simple, routine, repetitive in nature." (Tr. at 25.)

⁶ The Court also notes that to the extent that the hypothetical is ambiguous regarding the meaning of "repetitive" reaching, it is up to the ALJ to provide a sufficient hypothetical that fairly sets out Plaintiff's limitations, and the Commissioner cannot rely on an ambiguous hypothetical to avoid an apparent conflict. At the very least, further explanation by the ALJ is necessary so that the Court can determine whether the ALJ's decision is supported by substantial evidence.

not undertaken here. Accordingly, this matter requires remand based on the analysis set out in Pearson.[7]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #16] should be DENIED, and Plaintiff's Motion Summary Judgment [Doc. #13] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 12th day of December, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[7] The Court notes that Plaintiff raised an additional unresolved conflict with respect to the job of Mail Clerk with a DOT Reasoning Level of 3. See Keller v. Berryhill, No. 17-2248, 2018 WL 6264813, at *4 (4th Cir. Nov. 29, 2018) ("We therefore conclude that an apparent conflict exists between a limitation to short and simple instructions and Reasoning Development Level 3 occupations."). In light of the determination set out above, the Court need not address that issue further or reach the additional issues raised by Plaintiff in this case.